**EXHIBIT 2**

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
1:06 pm, Feb 24, 2016
JEFFREY P. COLWELL, CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ECP COMMERCIAL I LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | 16-MC-00038 |
| | ) | |
| **v.** | ) | **CASE NO.: 15-cv-02247-STA-cgc** |
| | ) | |
| **BOAZ SHOPPING CENTER LLC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## AGREED ORDER APPOINTING RECEIVER

THIS MATTER is before the Court on the Second Amended Complaint for Foreclosure, Appointment of a Receiver, and Injunctive Relief (the "Complaint") and accompanying Motion to Reappoint Receiver (the "Motion") filed by the plaintiff, ECP Commercial I LLC ("ECP"). It appears that due and sufficient notice of the Complaint and Motion have been given to all Defendants. Having read and considered the Complaint and the Motion, the arguments and statements of counsel having been presented and considered, and it appearing that venue and jurisdiction are proper in this Court and the relief requested is necessary to prevent irreparable harm and injury to ECP's rights and the Mortgaged Properties (defined below), and the rents and profits therefrom, as to which ECP has no adequate remedy at law, the Court hereby makes the following findings of fact and conclusions of law:

CERTIFIED TRUE COPY
THOMAS M. GOULD, CLERK
BY _____
DEPUTY CLERK

**Findings of Fact**

A.     The proposed receivership is a receivership of the Mortgaged Properties (as defined below).

B.     The proposed receiver, George E. Shoup, III, ("Shoup") an employee of Development Specialists, Inc. ("DSI"), is experienced in the arenas of distressed property, business management and sales. Both Shoup and DSI, who Shoup intends to retain as a financial consultant in this matter, have no interests or connections with any Defendant.

<b>Conclusions of Law</b>

(i)     The Court has jurisdiction over this matter and venue is proper, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1391.

(ii)     ECP has no adequate remedy at law to prevent potential irreparable harm and injury to its rights under the Loan Documents and with respect to the Mortgaged Properties (as defined in the Motion), and therefore, ECP is entitled to the relief requested in the Complaint and the Motion as hereinafter provided.

(iii)     Adequate notice of the Motion and the relief requested by ECP has been given to all Defendants.

IT IS ACCORDINGLY HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.     The Motion is hereby GRANTED, as provided herein.

2.     George E. Shoup, III be, and hereby is, appointed, with bond in the amount of $10,000, to serve as receiver (in that office and capacity, the "Receiver") for the Mortgaged Properties and for all of the Receivership Assets (as defined below), all of which will form a part of the estate that is in receivership (the "Receivership Estate"), such appointment to become effective upon the filing of an Oath of Receiver with this Court (the "Effective Date"). As used herein, the term "Receivership Assets" shall be construed broadly to include the Mortgaged Properties, whether real or personal, tangible or intangible and wherever located, including, without limitation, all rents and profits of the Mortgaged Properties and all of the types and items of property described in paragraph 3 below. Except as otherwise provided herein with respect to actions that may be taken by ECP, the Receiver shall be exclusively authorized to manage the Receivership Estate and to possess, manage and safeguard the Mortgaged Properties and no other person or entity claiming to have an interest in the Receivership Assets, shall have any authority or control over or with respect to the Receivership Estate or any of the Receivership Assets.

3.     Subject only to the rights and liens of ECP, the Receiver shall have all powers and rights to administer and manage the Receivership Estate and to assume custody and control over certain Receivership Assets, including, but not limited to, the following property, whether or not such property constitutes Mortgaged Properties:

a.     all of the Shopping Center Defendants' interests as landlord under any lease of premises or any other place at which any Receivership Assets are located (but

neither the Receiver nor the Receivership Estate shall be deemed to have assumed any of the obligations under any lease with any other person, but the use and occupancy of any such premises shall be conditioned upon the Receiver receiving rent accruing hereafter in respect of any premises that are used for purposes beneficial to the Receivership Estate) and the Shopping Center Defendants' interest in any leasehold improvements on any leased premises (all such business premises and improvements being collectively referred to as the "Facilities");

b.      all items of machinery or equipment owned by the Shopping Center Defendants, wherever located, or used by the Shopping Center Defendants and located in, on or about the Facilities, including, without limitation, all computer equipment, office equipment and supplies (collectively, the "Equipment");

c.      all accounts receivable, promissory notes, payment intangibles, chattel paper, instruments and other rights of the Shopping Center Defendants to the payment of money in connection with the operation and management of the Mortgaged Properties (collectively, the "Accounts");

d.      all deposit accounts of the Shopping Center Defendants relating to the operation and management of the Mortgaged Properties (collectively, the "Deposit Accounts"), including, without limitation, all checking accounts, savings accounts, payroll accounts, payroll tax accounts, petty cash accounts, and escrow accounts;

e.      all business records of the Shopping Center Defendants relating to the operation and management of the Mortgaged Properties, in whatever form or media maintained (collectively, the "Records"), including, but not limited to, all documents

evidencing ownership of any Receivership Assets (including bills of sale and certificates of title), books of accounts, financial statements, balance sheets, ledgers, expense statements, logs, maintenance and servicing records, journals, reports, and other documents relating to the past or future use, operation or maintenance of any Receivership Assets;

f.      all of the Shopping Center Defendants' investment property relating to the operation and management of the Mortgaged Properties, including, without limitation, stocks, bonds, and other securities;

g.      all insurance policies relating to the operation of the Mortgaged Properties;

h.      all of the Shopping Center Defendants' permits, licenses, registrations and certificates (including, without limitation, certificates of registration and re-registration relating to any aircraft) that were issued by governmental authorities or are necessary for the ownership or use of any of the Receivership Assets or the operation of any of the business of the Shopping Center Defendants, and the Receiver shall be entitled to operate and to all of the other benefits and privileges arising under all of such permits, licenses, registrations and certificates;

i.      all of the Shopping Center Defendants' general intangibles, customer lists, and rights under contracts relating to the operation and management of the Mortgaged Properties;

j.      all causes of action, claims, rights in respect of pending or potential litigation and arbitration proceedings, and judgments owned by or in favor of the

Shopping Center Defendants relating to the operation and management of the Mortgaged Properties;

k.      all patents, trademarks, copyrights and other intellectual property of Defendants relating to the operation and management of the Mortgaged Properties;

l.      all of the Shopping Center Defendants' rent deposits, security deposits and other refundable deposits of money or other property, as well as all of the Shopping Center Defendants' rights to receive rent and storage fees and claims against others for unpaid rent or storage fees;

m.      all tax refund claims of the Shopping Center Defendants, whether now in existence or hereafter arising, relating to the operation and management of the Mortgaged Properties; and

n.      all rents, income, monies, fees, revenues, proceeds, and profits now existing or hereafter generated from the collection, sale or other disposition of any of the Mortgaged Properties (collectively, the "<u>Revenues</u>").

4.      Except as otherwise expressly restricted in this Order, the Receiver shall have and possess all powers, privileges and prerogatives ordinarily provided to receivers under law. In addition, and without limiting the generality of the foregoing, but subject to paragraph 6 below, the Receiver is hereby authorized and empowered to:

a.      take immediate possession of, hold and secure all Receivership Assets;

b.      manage, control, operate and maintain the Receivership Estate;

c.      receive, collect, sue for, settle or compromise all Accounts, Revenues and other Receivership Assets;

d.      make such ordinary and necessary payments, distributions, and disbursements as the Receiver deems advisable or proper for the marshaling, maintenance or preservation of the Receivership Assets;

e.      negotiate with any creditors and contract counterparties of the Shopping Center Defendants for the purpose of compromising or settling any claim, including, without limitation, the surrender of assets to secured creditors;

f.      renew, cancel, terminate, or otherwise adjust any current or pending lease agreements to which the Shopping Center Defendants are a party;

g.      institute, defend, compromise or adjust such actions or proceedings in state or federal courts now pending and hereafter instituted, as the Receiver in his discretion may deem to be advisable for the protection and administration of the Receivership Estate;

h.      institute actions, suits or other proceedings to obtain possession or custody of or control over any Receivership Assets, to pursue causes of action held by the Shopping Center Defendants, and to collect any amounts owed to the Shopping Center Defendants, including, but not limited to, accounts receivable, whether any such suits or proceedings are instituted in this Court or any other court or tribunal having competent jurisdiction, to the extent that the Receiver determines that such actions will preserve or maximize the value of the estate;

i.      execute any necessary documents to allow the Receiver to take possession of and control of, and to draw checks on, any Deposit Accounts and to open bank accounts or other depository accounts, in the name of the Receiver on behalf of the

Receivership Estate, provided that the Receiver shall provide ECP with at least five (5) business days prior notice before opening any new bank or other depository account;

      j.     issue subpoenas as the Receiver deems necessary to determine any and all parties asserting any rights to the Mortgaged Properties or the Receivership Estate, without the necessity of compliance with any rule or provision of law that would impose any limitations on the Receiver's ability to issue such subpoenas;

      k.     prepare tax returns and related documents regarding the assets and operation of the Receivership Estate;

      l.     file such reports and documents with federal, state and local officials as are required or are deemed by the Receiver to be necessary or appropriate in connection with the operation of the Shopping Center Defendants' business;

      m.     following at least five (5) business days' prior notice to the Shopping Center Defendants, abandon any Receivership Assets that, in the exercise of the Receiver's business judgment, are burdensome to the Receivership Estate;

      n.     The Receiver is hereby authorized to employ Harris P. Quinn and Prochaska Quinn & Ferraro, P. C. as his counsel and attorneys, engage other attorneys, accountants, appraisers, brokers, auctioneers, environmental experts, and other consultants and experts (collectively, the "Professionals"), on terms acceptable to ECP, to assist the Receiver in the performance and discharge of her rights, powers, and duties hereunder and pay such Professionals reasonable retainers and their fees and expenses as such become due and payable; provided, however, that prior to any such payment by the Receiver to a Professional, the Receiver shall provide copies of the Professional's

invoices to ECP, who shall have a period of ten (10) business days after receipt of an invoice within which to send a written objection to payment to the Receiver, and if an objection is timely made by ECP, the fees and expenses that are subject to the objection shall not be paid except upon the subsequent written consent of ECP or further order of this Court;

o.    subject only to the requirements and limitations in this or future Orders of this Court, sell, lease or otherwise dispose of any of the Receivership Assets in or outside of the ordinary course of business, as a going concern or as part of an orderly liquidation, or in such public auctions or private sales as the Receiver may deem appropriate; and execute and deliver such bills of sale and other related documents in order to transfer all of the Shopping Center Defendants' right, title, and interest in and to any of the Receivership Estate to any purchaser thereof;

p.    pay from the Revenues (to the extent agreed by ECP or otherwise ordered by this Court) or Protective Advances (defined below) the expenses of the Receivership Estate, including Professional Fees (defined below), and the costs of entering into any new lease agreements deemed to increase the value of the Receivership Estate by the Receiver, including, without limitation, expenses for rent, utilities (gas, electric and water), supplies, wages and salaries, taxes (payroll, sales and personal property ad valorem), tenant improvements, capital expenses and ordinary and necessary repairs and maintenance to any of the Receivership Estate;

q.    approve all existing and prospective subcontractors, vendors, suppliers, distributors, customers, licensors, licensees, landlords, tenants and subtenants of the

-9-

Shopping Center Defendants, including, without limitation, by way of approving leases, licenses, and other agreements and any amendments, renewals, extensions, modifications, or waivers of any leases, licenses, or other agreements between the Shopping Center Defendants and any existing or prospective subcontractors, vendors, suppliers, distributors, customers, licensors, licensees, landlords, tenants and subtenants of the Shopping Center Defendants, with any disputes related to such dealings to be subject to the jurisdiction of the Court;

r.     receive, open, read, and respond to all mail addressed to the Shopping Center Defendants; provided that if the Receiver receives and reviews communications to the Shopping Center Defendants that are marked confidential, attorney-client privileged or similarly restricted, he shall maintain the confidentiality of such communications and neither his receipt nor his review of any such communications shall be deemed a waiver of any attorney-client privilege or similar protection that otherwise applies;

s.     provide a written statement each month (for the prior month) of cash receipts and cash disbursements to the Shopping Center Defendants and ECP as well as any other reports and budgets reasonably requested by ECP or required by the Court;

t.     request and receive from the Shopping Center Defendants' outside accountants and auditors (collectively, the "Auditors") all records and information relating to the Shopping Center Defendants' financial performance and condition in 2011, 2012, 2013 and 2014 for the purpose of, among other things, filing amended tax returns for Defendants and seeking any tax refund to which the Shopping Center Defendants may be entitled (and such Auditors are hereby authorized and directed to turn over all such

records and information to the Receiver) and provide the Shopping Center Defendants with copies of any amended returns;

u.     communicate and negotiate with any regulatory or other authority regarding the operation of the Receivership Estate or the issuance or renewal of any permits, licenses, certificates or registrations in connection therewith; and

v.     take such other action as may be approved by this Court following prior notice to ECP and Defendants.

In addition to the powers and instructions set forth hereinabove, the Receiver shall have all of the powers of a receiver that are authorized by law and all other powers necessary or proper to preserve and manage the Receivership Estate, including, without limitation, the Mortgaged Properties, and to perform obligations and exercise rights and remedies under existing agreements between or among Defendants and any third parties.

5.     The Receiver is authorized to take any and all actions not specifically enumerated herein which are necessary and proper to properly and adequately sell, lease, license, encumber, collect, compromise, or otherwise dispose of or use the proceeds of all or any part of the Mortgaged Properties. Notwithstanding anything to the contrary in this Order, the Receiver shall not be authorized to sell, lease, license, encumber, collect, compromise or otherwise dispose of, or use the proceeds of, any part of the Mortgaged Properties without (i) the prior express consent of ECP, which consent may be given or withheld in ECP's sole and absolute discretion and may, if so elected by ECP, be conditioned upon ECP's agreement as to the timing, method, manner and terms of any sale, lease, encumbrance, compromise or other disposition of any Mortgaged Properties, or (ii) an Order from this Court after notice to all creditors with an opportunity to be

heard pursuant to applicable law; and the Receiver shall in all events promptly account for and turn over to ECP, for application to the Obligations, all cash and non-cash proceeds received in connection with any sale, lease, collection or other disposition of any Mortgaged Properties. The Receiver shall, upon the entry of judgment in mortgage foreclosure, be authorized to expose the Mortgaged Properties to public foreclosure sales pursuant to 28 U.S.C. § 2001, et seq., and shall thereafter pass title to the Property to the successful bidder.

6.     Except with respect to lockboxes and other payment addresses in the control of ECP to which account debtors of the Shopping Center Defendants make payments in respect of Accounts, the Receiver is hereby authorized to notify the United States Postal Service to forward any mail addressed to the Shopping Center Defendants who are owners of any Mortgaged Property to any Post Office box or other mail depository. Further, the Receiver is authorized to open and inspect all such mail (subject to the same limitations noted in Paragraph 4(r) above), to determine the location or identity of assets or the existence and amount of claims.

7.     The Receiver shall be authorized to request and receive from ECP from time to time advances of funds (collectively, "Protective Advances") that are necessary for the Receiver's operation of the Shopping Center Defendants' business or the management, maintenance, marketing, sale, safeguarding, insurance, operation, increasing the value or repair of the Mortgaged Properties or other Receivership Assets, including, without limitation, payroll and payroll taxes, premiums for insurance, tenant improvements and amounts needed to make necessary and essential repairs to the Facilities, all of which Protective Advances by ECP shall be deemed an Advance under (and as defined in) the Loan Agreement to protect and preserve the Mortgaged Properties, shall form a part of the Obligations, and shall be secured by all and in the

priority of the liens and security interests granted or conveyed by the Shopping Center Defendants to or in favor of ECP. All Protective Advances may be made by ECP at such times and in such amounts as ECP may elect in its sole and absolute discretion. If ECP elects to discontinue making Protective Advances, ECP shall provide at least five (5) business days' prior written notice of such election to the Receiver (a "Funding Termination Notice"), and, if such notice is given, ECP shall fund one final Protective Advance to the Receiver in an amount sufficient to permit the Receiver to pay budgeted expenses and accounts payable with regard to the Receivership Assets which are incurred in the normal and ordinary course of business of the Receivership Assets and which are incurred by the Receiver on or after the Receiver's taking possession of the Receivership Assets, including accrued unpaid expenses, all unpaid wages, salary, payroll and payroll taxes attributable to time actually worked (excluding any severance, bonus or other extraordinary items), sales, use, and excise taxes and Professional Fees until the Receiver is released from his fiduciary obligations by this Court, in each case to the extent accrued through and including the date that ECP delivers such written notice of termination of funding to the Receiver.  The Receiver shall provide prompt written notice to ECP of any payroll, payroll taxes, sales, use and excise taxes owed by the Receivership Estate that have not been (prior to entry of this Order) or are not (after entry of this Order) paid as and when due. If ECP elects to send a Funding Termination Notice, then ECP shall file such notice with the Court, together with a motion seeking to terminate the receivership established pursuant to this Order; and at the hearing on any such motion, the Court may consider and determine the extent (if any) to which Protective Advances from ECP may be required to be made available to the Receiver in order to permit the Receiver to pay (i) unpaid actual expenses that were approved and incurred

by the Receiver after his appointment through the effective date of the Funding Termination Notice which may be disputed by ECP and (ii) a reasonable estimate of fees and expenses of the Receiver and his Professionals for services to be rendered after the effective date of the Funding Termination Notice in connection with winding up the receivership.

8.     Receiver's compensation and the compensation owed to Development Specialists, Inc., financial consultant to the Receiver, and any other professional retained by the Receiver including but not limited to counsel, accountants, property managers and/or other retained professionals (collectively "Professionals' Fees"), shall be paid monthly according to the hourly fees and other terms and conditions as more fully set forth on Exhibit 2 attached to the Motion and incorporated by reference ("Retention Letter"). Pursuant to the terms of the Retention Letter, ECP shall be obligated to advance sums for the payment of Professional Fees, including the holdbacks (upon Court approval) referred to in the Retention Letters.

9.     Professional Fees shall be paid first from income; if any; second, from any proceeds from the disposition of Receivership Property; and third, from sums advanced by ECP.

10.     ECP shall be authorized, at any time or times, to enter upon the Facilities (or any other location at which the Receiver maintains any of the Receivership Assets) for the purpose of inspecting the Mortgaged Properties or any other Receivership Assets, including all Records, Inventory or Equipment; conferring with officers, employees, or agents of the Receiver; and reviewing and making copies of any and all of the Records and any other documents at any time in the possession, custody or control of the Receiver. The Receiver shall periodically, at such intervals as ECP and the Receiver shall mutually agree upon (but no less frequently than once monthly), provide to ECP and the Shopping Center Defendants reports of the Receiver's

operations, cash receipts, disbursements and maintenance of the Receivership Estate. In no event shall ECP, by virtue of its exercising any right, power or privilege hereunder, be deemed to be in possession or control of any of the Receivership Estate, or to have asserted any supervisory control or decision-making authority with respect to the management, operation, protection or maintenance of any Receivership Assets, and ECP shall not be deemed to have assumed any obligation under the Shopping Center Defendants' agreements with any third parties and shall not be liable for the use, maintenance, repair, or operation of any of the Receivership Estate. All officers, attorneys and authorized representatives of the Shopping Center Defendants shall be entitled to review, inspect and copy any of the Records during normal business hours and at their own expense.

11.    The Shopping Center Defendants and each of their officers, directors, agents, attorneys and employees, all other persons acting at the direction of Defendants, and each other person or entity receiving notice of this Order by service or otherwise (but specifically excluding ECP), are hereby ordered immediately to (i) turn over to the Receiver the Records; (ii) pay over to the Receiver all cash and all funds and deposits in any Deposit Accounts or investments of the Shopping Center Defendants, except for funds required to pay checks for expenses of the Shopping Center Defendants that have been issued on or before the date of entry of this Order but have not yet been presented for payment; and (iii) cooperate with the Receiver in identifying and locating Receivership Assets, transitioning the operations of any Receivership Assets to the Receiver, and identifying and investigating any causes of action of the Shopping Center Defendants. Notwithstanding the foregoing, all proceeds of the Mortgaged Properties shall be

remitted by the Receiver (or any other person or entity in possession thereof) to ECP for application first to Professional Fees and then to the Obligations.

12.     The Shopping Center Defendants shall fully cooperate with Receiver in adding Receiver and Plaintiff as additional insureds and ECP and Receiver as the loss payee on all insurance policies relating to the management of the Receivership Assets including, but not limited to, fire, extended coverage, vehicle coverage, property damage, liability, fidelity, errors and omissions, and workers' compensation, and modifying the policies if deemed appropriate by Receiver, but subject to approval by ECP. As to property damage only, but not for to liability to third parties, the rights of ECP as loss payee with respect to proceeds of insurance upon the Mortgaged Properties shall at all times be superior to Receiver until the Shopping Center Defendants' obligations to ECP are repaid in full. The Shopping Center Defendants shall provide the Receiver with a complete and accurate copy of all existing insurance policies related to the Receivership Property or, if coverage has lapsed, a complete set of the most recent policies and papers related to the most recent insurance coverage maintained for the Receivership Property. The Shopping Center Defendants and their members, managers, officers, independent contractors, employees and agents are prohibited from canceling, modifying, reducing, or otherwise changing any and all insurance coverage in existence with respect to the Receivership Property, provided, further that the Shopping Center Defendants shall not be obligated to fund any premium payment on any insurance policy subsequent to the entry of this Order.

13.     Within thirty (30) days of the date of this Order, the Receiver shall prepare for review and approval an initial thirteen (13) week cash flow budget (the "Initial Budget"). For each period covered by the Initial Budget and any subsequent updated Budget, the aggregate

actual disbursements by Receiver during such period of determination shall be no greater than 110% of the aggregate amount of projected disbursements for such period as set forth in the Initial Budget or any subsequent Budget. Receiver shall provide to ECP no later than the 15th of each month, unless otherwise requested by ECP, a line-by-line variance report for the immediately preceding month as well as on a cumulative basis from the date of entry of this Order to the report date (each a "Variance Report") showing the actual amounts attributable to each line item in the Budget. Concurrent with delivery of the Variance Report, Receiver shall provide to ECP an update of the most recent Budget prepared in substantially the same form as the initial Budget, (the "Rolling Budget"), which Rolling Budget shall be satisfactory in form and substance to ECP. The Initial Budget and each subsequent Rolling Budget may be amended from time to time without further notice to any parties in interest in this matter or further order of this Court upon the prior written agreement of ECP, and the amended budget shall become the Budget or applicable Rolling Budget under the terms of this Agreed Order.

14.     The Receiver may, in his discretion and for the purpose of maintaining going-concern value of any Receivership Assets, permit officers or employees of Defendants or Spectra Properties, Inc. to collect, sell, possess, manage, protect, market and otherwise deal with some or all of the Receivership Assets on such terms, and subject to such limitations and conditions, as the Receiver deems appropriate, but in all events subject to the prior written consent of ECP and the other provisions of this Order requiring a turnover to ECP, for application to the Obligations, of proceeds of the Mortgaged Properties.

15.     During the pendency of this Receivership, absent express permission of this Court, all actions by any creditors, lessors, landlords, taxing authorities and other persons and

entities seeking money damages, dispossession of Receivership Assets or other relief from Defendants or the Receivership Estate and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are, until further order of this Court, hereby stayed. Further, except for ECP, all persons and entities who have or receive notice of this Order, including (i) the Shopping Center Defendants (and all officers, directors, employees and agents of the Shopping Center Defendants), (ii) all creditors of the Shopping Center Defendants, and (iii) all persons or entities acting at the direction or on behalf of any of the persons described in clauses (i) or (ii), including, without limitation, sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees, are hereby **RESTRAINED AND ENJOINED** from (a) destroying, concealing, using, collecting, taking possession of, transferring, asserting dominion or control over, repossessing, seizing, attaching, garnishing, executing upon, seeking to impose a judicial lien upon any Receivership Assets, (b) otherwise interfering with the possession, custody, control, use, or management by the Receiver of any Receivership Assets or with the Receiver's exercise of powers or discharge of duties under this Order, (c) altering any Records, (d) cancelling, terminating or limiting any insurance coverage, permits, registrations, certificates, licenses or contracts of the Shopping Center Defendants, or (e) filing or prosecuting any actions or proceedings that involve the Receiver or that affect any Receivership Assets, except to the extent authorized by the Receiver or to the extent that any party to such action or proceeding may be required to answer or reply to any pending complaint, motion or other pleading in order to avoid default.

16.    The Receiver is authorized to file, record or register this Order with appropriate government offices and courts and to serve this Order on any person or entity whom the Receiver reasonably believes to be in custody or control of funds or other assets properly belonging to the Receivership Estate.

17.    If the Receiver determines that the aggregate amount of Revenues and Protective Advances available to the Receiver are insufficient to pay the reasonable and necessary expenses of maintaining, preserving, and operating the Facilities in compliance with applicable law, then the Receiver may, on not less than ten (10) business days' written notice to ECP and Defendants, file with the Court a resignation and termination of the Receiver's further responsibilities to serve as receiver hereunder, whereupon, subject to a surrender of all of the Mortgaged Properties to ECP and the filing of a final report regarding the receivership with the Court, the Receiver shall be discharged. In connection with any such surrender of the Mortgaged Properties to ECP, the Receiver, for himself, on behalf of the Receivership Estate and on behalf of Defendants, shall be deemed to have waived any notices otherwise required to be given by ECP in connection with any sale or other disposition of any of the Mortgaged Properties, including, without limitation, any notices otherwise required under the Uniform Commercial Code.

18.    The Receiver is authorized to communicate with all persons as he deems appropriate to inform them of the status of this matter and the Receivership Estate. In connection with any final report, accounting and discharge of the Receiver, the Receiver shall seek and obtain final approval from the Court of the professional fees and expenses of the Receiver, his firm and his counsel.

19.     Upon the request of the Receiver, the United States Marshal's Office, in any judicial district, is hereby authorized to assist the Receiver in carrying out his duties to take possession, custody or control of, or identify the location of, any assets, records or other materials belonging to the Receivership Estate.

20.     Notwithstanding anything to the contrary in this Order, ECP is hereby authorized (but not required) to take all actions it deems necessary or appropriate to realize upon any of the Mortgaged Properties, including, without limitation, collection of any Accounts, foreclosure of its liens upon any or all of the Mortgaged Properties or exercise any power of sale granted in any of the Loan Documents, and apply the proceeds thereof to the payment of the Obligations. Except as otherwise expressly agreed by ECP, the Receiver shall turn over all proceeds of the Mortgaged Properties to ECP for application to the Obligations.  Upon any foreclosure by ECP, the Receiver shall cooperate with ECP and the party purchasing any of the Mortgaged Properties at foreclosure by relinquishing possession of such Mortgaged Properties and taking any other actions that may be necessary or desirable in connection with a foreclosure by ECP.

21.     The Clerk of the Court is authorized and directed to make certified copies of this Order, at the Receiver's request, for use by the Receiver.

22.     The Receiver, while lawfully acting as such (including his employees, agents, and professionals that he may retain to assist him with the performance of his duties, and others engaged in connection herewith), is deemed an agent of the Court and is entitled to and shall have immunity to the fullest extent of the law, from and against any and all causes of action, suit, proceedings, claims, demands, suits, losses, damages and liability, including costs and a reasonable receiver and attorney's fees ("Claims"), in any manner arising from, in connection

with or relating to any of the Assets and/or in the course of his acting in such court appointed capacity. The Receiver is entitled to rely on all outstanding rules of law and Court orders and shall not be liable to anyone for his own good faith compliance with any order, rule, law, judgment or decree. In no event shall the Receiver be liable for his good faith compliance with the terms and provision of this Order, nor shall he be liable to anyone for any action taken omitted by it except upon a finding by this Court that he acted or failed to act as a result of misfeasance, bad faith, gross negligence or in reckless disregard of his duties. Further, so long as the Receiver acts as authorized herein, the Receiver, and his employees, agents, retained professionals, and others engaged in connection herewith, shall be indemnified and held harmless by the Receivership estate from any and all right, claim, or causes of action brought against the Receiver, and his employees, agents, retained professionals, and others engaged in connection herewith, including the costs and expenses of defense of such claims or actions. The Receiver shall not be liable for the obligations of the Shopping Center Defendants to third parties (whether or not such persons or entities are a party to this litigation) to include, without limitation, tax liability (payroll taxes, income taxes, or back taxes of any kind); worker's compensation and unemployment compensation premiums or other obligations; wages, benefits, and other compensation due to employees, officers, directors, or agents; and contract indebtedness to third parties arising prior to his appointment and qualification as the Receiver.

23.     The Shopping Center Defendants, ECP and any other person asserting a lien upon any assets in the Receivership Estate, may request, by written motion filed with the Court and with at least five (5) business days' notice to ECP and Defendants, a status conference or any other appropriate relief as to the results of the Receiver's management and liquidation of the

28.     There being no just reason for delay, the Court finds this is a final, appealable

order.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: February 19, 2016

AGREED TO BY:

**BRADLEY ARANT BOULT
CUMMINGS LLP**

By:     /s/ Austin L. McMullen
        Austin L. McMullen
        Roundabout Plaza
        1600 Division Street, Ste. 700
        Nashville, TN 37203
        Telephone: (615) 244-2582
        Facsimile: (615) 252-6380
        Email: amcmullen@babc.com

**LEITESS FRIEDBERG PC**

Jeremy S. Friedberg
10451 Mill Run Circle, Suite 1000
Baltimore, Maryland 21117
Telephone: (410) 581-7400
Facsimile: (410) 581-7410
Email: jeremy.friedberg@lf-pc.com
OF COUNSEL

*Counsel for Plaintiff*

**GLANKLER BROWN, PLLC**

By:     /s/ Michael P. Coury
        Michael P. Coury
        6000 Poplar Avenue
        Suite 400
        Memphis, TN 38119
        Telephone: (901) 525-1322
        Facsimile: (901) 525-2389
        Email: mcoury@glankler.com

*Counsel for Defendants*